May it please the court. My name is Peter Wolfe. I'm representing Mr. Vo in this case. To begin, I would like to mention a sentencing issue which arises in this case and from the Blakeley decision, which was not briefed, but which we attempted to raise by a Rule 28J letter. Counsel, how do you deal with your waiver? Didn't you waive appeal? No, I don't think so, Your Honor. This case went to trial. Oh, all right. Okay. I'm on the wrong page. It caught me by surprise for a second, too, Your Honor, because in many cases we do waive appeal, but this is not one of them. In any event, as I was preparing for this argument, I was a little concerned that maybe sending a Rule 28J letter was not the right way to bring this issue to the court's attention. Although, in the wake of Ammaline, where the court, sua sponte, raised the sentencing issue and demanded the district court to take it up without any briefing or apparently mentioned by any of the parties, maybe it was okay. In any event, given what was happening in the Supreme Court with Booker and Fanfan, it occurred to me that the court might appreciate less paper on a subject that was nothing more than rewrites of what's been submitted in other courts at other times. But in any event, two days ago, this court issued an opinion in a case that has almost nothing to do with Bo's case except for one thing, and that was the Padilla decision. And in Padilla, the court said the following. After this appeal had been submitted for decision, the Supreme Court of the United States decided Blakely be Washington. Padilla moved for a supplemental briefing on the effects of Blakely on his sentence. In the interest of judicial economy, however, we do not address the Blakely issues, and we accordingly deny Padilla's motion. Because the Supreme Court has pending two appeals that are likely to shed light on Blakely's effect on the United States sentencing guidelines, see United States v. Booker, United States v. Fanfan, we remand the district court with instructions to resentence in accord with those Supreme Court decisions if they affect Padilla's sentence. And so that would be my request here in terms of Mr. Bo's case. His case, I would submit, is affected by Blakely, assuming that Booker and Fanfan applied Blakely to the guidelines, and it's affected in the following way. The jury's verdict in this case encapsulated a finding that the amount of drug involved was more than 50 grams of methamphetamine, but the jury didn't make any finding beyond that. And by itself, that finding would have resulted in Bo being at the level 26 of the sentencing range, given his criminal history of 70 to 87 months. Now, of course, 70 to 87 months in this case was trumped by two things. First, it was trumped by a 10-year mandatory minimum, and the government had filed a special information pursuant to Section 851 of Title 21. So his mandatory minimum was actually 20 years, not 10 years. But based on the district court's finding about the amount of methamphetamine and the purity of it, Bo was jumped from level 26 to level 38. And at level 38, his sentencing range was 262 to 327 months,  so the part of the sentence that's affected by Blakely, assuming that Booker and Fan can apply Blakely to the sentencing guidelines, is that part of the sentence that's above 240 months. So it's the 22 months between 240 and 262, 262 being the actual sentence that was imposed upon him. So in terms of that issue, what I'm requesting is that the court remand to the district court to take up the matter of whether Bo's sentence is affected by Blakely, assuming that... That would require us to agree that it should be raised sua sponte, or that you can raise it in this manner, though, because it's not been raised in your opening brief. It was not raised in the opening brief, and it was... But I think the precedent for permitting it is what this court did in Ammaline, where apparently nobody raised the issue, but the court raised the issue several days after Blakely and said this is an issue that needs to be decided. And, of course, in the long run... It's somewhat in tension with our cases that have held since time immemorial that issues completely not raised by an appellant are waived. Well, I wouldn't say that this issue is completely not raised. Well, you didn't raise sentencing issues at all in your opening brief, did you? That's true. Okay. And so we did one thing, which is file a Rule 20HA letter when, if you read Padilla, we should have done another thing, which is file a motion for supplemental briefing, which this court denied and said, well, we don't need your briefing. We'll just let the district court decide this case in the first instance. Is the question open to you by way of a collateral attack after the appeal is terminated? Undoubtedly it would be. Is that a better procedure to follow, or is it better to do it here? Well, my view is it's better to do it here because, given that we're likely to have a decision from the Supreme Court sometime in the next several months. In view of the length of your client's sentence, there's no great hurry. Well, he's in no hurry, I guess, if you take that view. But it seems to me that... Well, you conceded that 240 months is a statutory minimum. Right. And he's nowhere near served even closer to that. That's quite true. We're hopeful, though, on the other issues of the case. Let us turn to those. Yes, let me turn to the first one, which was the speedy trial issue. The issue of the bone of contention here really is 12 days, which was the only ruling the district court made. There were some other issues that were contended, but the district court made a ruling that the 12 days during which the government's motion to detain the defendant was pending were excluded from the counting or from the running of the clock under the Speedy Trial Act. And so it leads to some rather counterintuitive, and I would say contrary to the congressional intent, results. Because if you take Bo's case, where the government moved to detain Bo, and where the time during which the motion was pending was 12 days, and then you take a case similar to Bo's case, where the government didn't move to detain the person, and so they never were detained, you have the anomalous result that the person who's detained has a lesser right to a speedy trial than the person who isn't detained. Which doesn't seem to make a whole lot of sense. And in addition, it seems that we've discussed this at length in our brief, that what has happened is that dicta in some cases from other circuits has kind of been used to limit, or maybe this case will be the case that trumps the analysis that this court did in Clymer and render the language of the statute and the analysis in Clymer more or less a nullity, except in a very special way. Didn't we already say in Springer that Clymer was going to be limited, pretty sort of cabined over to one side, strictly limited to its facts? That was said, but it was something that was unnecessary for the determination in Springer, and so I view it as dictum. And the question really here is whether the dictum in Springer and those other cases will be turned into a holding that limits Clymer. And so that then you have the result that the word result is read out of the statute, because what the statute says is what's excluded is time or delay resulting from the filing of any pretrial motion. And this pretrial motion here, the government's motion to detain, is a little bit unique, or at least it's unique in the way these motions are dealt with in this district. And this may not be true all over the circuit. This motion did not appear at any point within those things that the district judge had to do with this case. The motion was filed at the time of the filing of the complaint before the magistrate judge. The initial order of detention, while the three days that the statute provides for the detention hearing went by, was ordered by the magistrate judge. And then when the parties appeared for the arraignment, because the government had indicted the defendants, and so they appeared on the day scheduled for the detention hearing, and then the arraignment was had and the detention hearing was postponed at Bo's request because the pretrial services officer who had prepared the report was not available and there were some issues about the report that needed to be taken up. The matter was continued for several more days, and the total days involved is 12. And every one of those days was a day in front of the magistrate judge. And so the district judge never considered this detention hearing, this detention motion, anything about detention at all. But to say that the right that Bo had to a speedy trial under the statute would be vitiated by the fact that the magistrate judge had something under consideration or delayed something really turns the analysis of the intent of Congress, I think, on its head. Because you take a statute which says in two separate places in succession that what they will exclude from time that's running is delay resulting from the filing of any pretrial motion, and then turn that into something that means when no delay resulted from the motion, and the motion wasn't even pending in front of the only judge who could try the case, and he never considered it at all, that that delay is excluded seems to me completely wrong. And if you look at some of the other cases from the other circuits, some of the detention, and I think this is the, I can't remember, the second circuit case, some of the time that they exclude as detention hearing time is time that it was pending in front of the district judge. So I don't have any particular quarrel, given the statements made in the other cases, about the notion that if after Bo was ordered detained by the magistrate judge, Bo had appealed that determination to the district judge, and now it's actually on the district judge's docket sheet or his calendar, and he takes one or two days or whatever it takes to decide the appeal of the detention motion, or if on the other hand the government, if they didn't succeed in having the magistrate order detention, themselves appeal to the district judge. So now the issue is really in front of the district judge, who is also the trial judge. I don't have any quarrel with those days being days that don't count to the speedy trial clock, but it seems quite anomalous that days when the matter is pending in front of the magistrate judge should knock out the defendant's right to a speedy trial when the magistrate judge isn't the judge who has any power to try this case. And of course in this case we have the fact that the trial date was actually set without reference to this postponement of the detention motion, and as I said and have said, the district judge, whether he was aware of it or not, had nothing to do with the determination of the detention motion, and it was never appealed to the district judge. Now it could be that in other districts that the calendar is handled differently, and the district judges arraign the defendants in the cases assigned to them and hear the detention motions directly, and in such a situation I would not quarrel with the notion that a detention motion actually is in front of the district judge and might be considered to be delaying the proceedings. At least it's necessary that the detention motion be decided before the trial can commence, but here where the whole matter is in front of the magistrate judge and the district judge, whether he's aware of it or not, has nothing to do with it, it seems to me that the interpretation urged by the government of this statute and of the prior cases turns the whole notion of having a speedy trial on its head, and you result in the person who is sought to be detained by the government having less right to have his case tried speedily than the person who's never sought to be detained at all. I have one quick question about your other main argument, and that is a question of waiver on the marital privilege. Right. You have suggested in your brief that there has to be somehow a personal waiver of I hereby waive, rather than simply allowing testimony to go forward without a contemporaneous objection. What's your authority for that proposition? Well, I think the analysis in Olano itself distinguishes between waivers, which involve or might involve, say, making an objection and then withdrawing it, and forfeiture of a right, which involves never doing anything at all, which is what happened here. Ordinarily, though, if let's say you have a priest-penitent privilege and the priest gets up and testifies and there's no contemporaneous objection, wouldn't we normally just say, well, that's waived? I don't think so. Well, I would submit that there's some imprecision in the way the term waiver is used, but when you're talking about raising the issue on plain error, which is what we're doing here, and when the Supreme Court has— And when there's no objection, why would that be plain error? It would be plain error if the court views it as a forfeited right that was plainly erroneous and that affected substantial rights, and not to notice it would involve the integrity or fairness or public reputation of the priest. But it's a waivable thing like anything else, right? I mean, a person can waive this privilege. Yes, but a silent record is not enough to impute a waiver, certainly not to Mr. Bowe, who's unlikely to have known very much about his marital privilege. But his lawyer is deemed to know it. Well, I guess he is deemed to know, but— So maybe you have an ineffective assistance claim for collateral review, but I really have—I guess just speaking for myself, I have difficulty seeing how you get around it on direct review. Well, because the implication of what you're saying, Your Honor, is this, that there can't be any plain error on an evidentiary point, because if the evidentiary point is objected to, then you're not in the area of plain error. You're talking about an objected-to evidentiary point that has been preserved. So if no objection is made, and if the silence constitutes a waiver as opposed to a forfeiture of the right, then— Well, you're talking apples and oranges, though. One has to do with the waiver of a privilege, and the other has to do with the waiver of objecting to evidence, and they're slightly different, because many evidentiary objections have nothing to do with privileges. Well, but there's no way to raise the objection with respect to testimony about the privilege, except when they make an objection. You invoke the privilege. What's that? You invoke a privilege to protect against the testimony. Right, and you do that by objecting. No, you invoke the privilege. Your Honor, well, you object to the testimony going forward because a privilege bars the prosecutor from going into these matters because I married this woman, right? That's right. So you make an objection, and that wasn't done here, so you have a— So the evidence came in. That's right, and that's why we're seeking to bring it as plain error, saying there's a— You're saying it's plain error, so did you expect the district court ordinarily then to prevent you from forfeiting it? I mean, what should the district court have done here in order to prevent review of this kind of an error? Should the district court have said, counsel, are you waiving the privilege here, or should the district have prevented the witness from testifying? I don't think the district court should have done anything if we're here on plain error. That's the point of plain error. Well, plain error points out errors that the district court made. It's not just errors that counsel made or errors— Right. So what should the judge have done in the conduct of the trial that the judge did not do? The judge should have determined that what Brenda Boe was talking about were communications between her and her husband in a circumstance where there was— where the privilege applied and the government had not laid the foundation for the only exception to the marital privilege, which is that the two were involved in freely undertaken joint criminal activity. And the other exception is that the privilege is not invoked. And there's no obligation to the government to lay the foundation. If the defendant wants to claim the privilege, he can lay the foundation. Brenda Boe is the government's witness, Your Honor. The government is putting her— It's the testimony that's coming into court that the defendant does not want to come into court. He doesn't want to come into court because he says he has the privilege. It's his obligation to establish the fact of marriage and marital communications. The district court judge doesn't know this. He did know it. He said at the pretrial conference that he asked the government, and the government represented that it would—this is a rather cryptic exchange, but the government represented that it would only be about criminal matters. And the district judge then said to a defense counsel, so you won't have any problem with that, right? And defense counsel said, that's right. Then why isn't that the waiver? Because I think you can understand that exchange to involve the government basically saying, we are going to put this testimony within the exception to the privilege that exists, which is for freely undertaken joint criminal activity. And everyone expected that that would turn out to be true. And then it wasn't true. Counsel, you just have about half a minute left, and if you'd like to save it for rebuttal. Well, that would be a rather short rebuttal. It will. Okay, we'll hear from the government. May it please the court. Good morning. Tom Ehrlich for the United States. Your Honor, this case is simply what the United States believes to be a case that was properly tried, carefully tried by Judge Kaye. And the government submits the judge properly, found that the time of the motion to detain was excludable from the Speedy Trial Act. What do you say to Mr. Wolf's argument that the irony of the situation is that a client like his who's up for detention and wants to have a hearing as to whether he gets detained is going to have to sit longer in jail waiting trial than somebody who doesn't have to undergo detention. In other words, somebody who doesn't have to go to detention is going to get a trial in 70 days. On the other hand, if you get detained and you want to protest that, then you just lengthen the time you're going to sit there. I mean, it's a huge gamble that you take. That's true. Of course, people in detention are treated differently for other reasons than people on the outside. It's like adding another, you know, whatever. In this case, it's like adding another 12 days to a sentence. He's going to sit in jail for another 12 days unless he waives his right to protest the fact of his detention. Of course, and the defendant, of course, moved to continue the detention hearing in this case and moved to continue the trial in February. But he's not arguing about the motion to continue the trial. He agrees with that piece of it. But I guess I have some question also about the fact that these are things proceeding on two different tracks. In other words, the motion to contest the detention did not in itself alter the existing trial date. It proceeded on another track. And I guess I have some difficulty understanding why, in your view, it should be counted against the delay of trial track. Slightly different question than Judge Bivey's, but along the same lines. We can only look at what I can say, Your Honor. I can only look at the presses of the court finding and even earlier decisions talk about all pretrial motions. They are treated differently. I agree. I don't know that I go along with the argument that because this was before a magistrate rather than a court and it would have affected the court. Well, that's not what I asked you, though. And I'm not sure I agree with that piece of the argument either, whether it matters, you know, the title on the door. But the fact is here there was no delay of the trial date. There was a separate delay of the trial date. But with respect to the 12 days we're talking about, it was not accompanied in any way by a change of the trial date or a request to change the trial date. That's right, Your Honor. It was completely where do I live in the meantime until that trial date? And I'm not sure why that should count. I have not briefed on that, Your Honor. I have not thought about much of that until Mr. Woolf's argument this morning. I haven't thought much about that on that issue because of the detained defendant versus the at liberty defendant. I don't know that I can help the court this morning on that one. Our position means or our position is, as in our brief, is that the judge properly counted the days, properly counted the delay as being outside. Even though we affirmatively know that that did not result in the date of trial remained the same. That's right. It still counts as if it delayed the date of trial or it did. Well, it didn't delay it in the extent that, and there was a case I cited about the wording of the delay, what delay meant within the, and I think that's the Van Brady case, Van Brandy case that talked about a Second Circuit case, I think by the name of Cobb, that talked about, explained about how they looked at delay or. Well, if a motion relates to somehow the substance of the trial, what evidence can come in, that sort of thing. It certainly has the potential to delay the trial while the judge is thinking about how this trial is going to be, what shape it's going to take, what's going to come in, what's not going to come in, all those kind of motions. It somehow conceptually makes sense. But if the only question is, do I get to sleep in my own bed until this known trial date or do I have to sleep at the jail until this known trial date? I guess conceptually I just have difficulty understanding how that fits. I don't have an answer for that, Your Honor, in that regard. Our position was that Clymer was a special case. It's been talked about or it's been discussed several times since recently in Springer and Gorman and George, that it was limited. And the way I looked at Clymer, the way the United States read Clymer, was that perhaps the court implied that the district court was playing with a speedy trial act by setting the motion to dismiss for outrageous government conduct, moving that to build up, to build an exclusion, to play with a speedy trial act exclusion, setting it at the trial date that the trial had already been set and that it simply moved that motion until after the trial. And Judge Reinhart didn't like that. Well, I don't think anyone in this case is saying that anyone was playing with anything. I don't think there's any allegations anywhere. I don't really hear of bad faith or any of that kind of thing. I think we're just trying to figure out how this fits into what the statute is telling us, how it fits with the statutory. I haven't addressed that, Your Honor, and I apologize to the court. I don't have that. I haven't thought much about that dichotomy that Mr. Wolfe mentioned prior to this morning. What is your position about the sentencing issues that have been discussed today? Well, certainly there is a mandatory minimum that was 240. The defendant, I believe, got 262 months. And that issue, of course, the jury by special verdict finding found 50 grams, found a mandatory minimum of 10, which because of the 851 sentencing information enhancement that was filed in Article 21, it became a 20-year. So there is, I guess, a 22-month sentence that the defendant has that has not been specifically found beyond a reasonable doubt by a jury. So would you have no objection, counsel, to holding this case pending Booker and Fanfan?  No objection, Your Honor. Really. Out of fairness. May I move on to the next issue, Your Honor, if I could? Yes. We believe simply that there is no communications privilege that was violated by the testimony given by Mrs. Vogt. She was talking about her transactions, talking about the instructions given by her husband. I think it's the Marischall case that we cite talks about the joint criminal activity exception to the exception, or that the courts construe the marital privilege, the marital communications privilege very narrowly. The Roberson case, this Court's decision in Roberson talked about construing the exception or the privilege very narrowly because of the public policy concern. And in this case, all the defendant's testimony, or all the co-defendants' or Mrs. Vogt's testimony concerning the defendant's activities were related to the shipment of the parcel. What was going on and how to, when to tell him to deliver it, to change the delivery date, and what she saw and observed and what he told her about these other parcels. If we were to disagree with you on that exception, and we were to conclude that some of the communications to which she testified actually might have been or were covered, otherwise covered by the marital privilege, in your view, is there a waiver? There is no objection. There is a waiver. So this would pop over into potentially ineffective assistance of counsel on a collateral proceeding if there's nothing here for appeal. Well, it may. I would have to look at precisely what was said, but I don't know that the defendant can put his finger on one particular part of that trial where something was said, but assuming the court is saying, well, assuming he was, something shouldn't have come in and it didn't come in, then I'd have to look at vis-a-vis, was it a tactical decision not to object? I'm just saying the vehicle for dealing with that is not a direct appeal, regardless of the merits of it. It would be a collateral attack, 2255. Yes, Your Honor. And the last issue, if the court has questions on that, is simply we believe Judge Kaye, the district court judge, properly balanced the prior conviction, found it to be particularly relevant in the shoes that were presented in the two charges, the possession with intent to distribute and the conspiracy to possess with intent to distribute, the portrayal of the defendant by the defense, and the limiting instruction we've given. We believe that was clearly not an abuse of discretion on the court's part. Unless the court has particular questions. I don't believe that we do. Thank you, Mr. Wheeler. Thank you. Mr. Wolf, you have a few seconds if you'd like to add anything. Pardon me. This was the only exchange that occurred between the court and counsel at the pretrial conference about the marital privilege. Judge Kaye said, you know, in terms of the marital privilege, I mean, I am assuming that the only thing that's going to be testified to is criminal activities. And Mr. Mulek said criminal activities. And the court said, yeah, so we're not going to have an issue with that, correct, Mr. Waite? And Mr. Waite said, I believe that's true, Your Honor. Now, one way of looking at that, which is the way I look at it, is that the government was, in effect, affirmatively representing that they would fit the testimony within the acceptance of the marital privilege. If they violated that, don't you have an obligation to stand up and say, wait a minute, this is beyond what we agreed to do? I think that's right. And that's why we're back to the question that burned up all my time the first time around, which is whether you could have a forfeiture and a plain error analysis in this kind of situation, or whether you can't, and then if you can't, perhaps Judge Graber is right, the only vehicle to raise the issue is ineffective assistance. But I don't read Anno and those other Supreme Court cases dealing with plain error as restricting the kind of analysis the court can do to cases other than privilege cases. And I think if the court's analysis is, as some of the questions and comments have suggested, then really that is reading Olano in a way that Olano itself doesn't actually permit. Thank you, counsel. We appreciate the arguments of both counsel. The case just argued is submitted.
judges: Breezer Graber, Bybee